IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

**MICHAEL MONTANA and KENNETH HENDRIX,**  **PLAINTIFFS**
Each Individually and on Behalf of
All Others Similarly Situated

vs.                         No. 2:22-cv-143-DLB-EBA

**PRYSMIAN CABLES AND SYSTEMS USA, LLC**           **DEFENDANT**

## DECLARATION OF JOSH SANFORD

I, Josh Sanford, do hereby swear, affirm, and attest as follows, based upon my personal knowledge of the matters contained herein:

1. My name is Josh Sanford, and I am over the age of eighteen (18) and duly qualified to execute this declaration.

2. I am a resident and domiciliary of the State of Arkansas.

3. I am an attorney licensed in courts in the states of Arkansas, Colorado, Michigan and Texas; I manage the Sanford Law Firm, PLLC.

4. I have litigated and/or am currently litigating many other collective actions under the Fair Labor Standards Act ("FLSA") in the Courts of the Western and Eastern Districts of Arkansas, as well as in the Eastern, Southern, Northern and Western Districts of Texas, the District of Colorado, and the Northern, Middle and Southern Districts of Alabama.

5. In these cases, it has been my experience that mail delivery problems not only exist, but they are in fact pervasive. In some cases, the mail problems have

prevented some members of a putative class from joining the lawsuit when they later expressed their desire to join the case—but it was too late to participate.

6.      An untold number of Notices sent by our firm are lost in the mail or returned undeliverable, even when the address provided by the defendant is correct.  Sometimes the returned envelope is not returned to us for more than 150 days from its first mailing to the class member.

7.      Additionally, some Consents signed and mailed by members of the putative class are lost in the mail. I know this because in my other FLSA collective actions, some potential opt-in plaintiffs have called to follow up on our receipt of their Consents, only to discover that we never received them.  Clearly, however, most people do not call to follow up after mailing their signed Consents, assuming that by putting their Consents in the mail, we will receive the Consents and join them in the lawsuit.

8.      On May 15 and 23, 2013, class members in one of our firm's other collective action lawsuits called our office because they had not received their Notices and Consents, which were mailed to them more than two months earlier. The addresses on file for these potential plaintiffs were correct, so their Notices and Consents were lost in the mail, and they only found out about the lawsuit from friends who had themselves received notice.

9.      In another instance in April of 2013, a would-be opt-in plaintiff in another case called our offices to find out how the case was going, and at that time we discovered that we never received the Consent to Join that he had sent us about four weeks earlier.

10.     In March of 2014, we received a returned envelope that contained a Notice and Consent in a collective action case; we mailed out the envelope in March of **2013**.

11. In May of 2015, we mailed Notice and Consent documents to a class in a collective action case in the Western District of Arkansas. We received several telephone calls from recipients of follow-up postcards who requested the Notice and Consent documents because the original mailing did not reach them.

12. On July 17, 2014, we sent out Notice to a class in the Western District of Arkansas. Then **415 days** later—on September 5, 2015, two of the notices were returned to our office as undeliverable. Amazingly, on January 2, 2016, a full **535 days** later, yet another undelivered Notice envelope was returned.

13. On April 21, 2017, an undelivered Notice was returned to our office **1,010 days** after it was originally sent, on July 16, 2014. On October 4, 2018, our office received a returned settlement notice and settlement check that had been postmarked on July 24, 2017, a delay of **437 days.**

14. In late August of 2020, on a single day we received as Returned--Undeliverable a single batch of over 400 wage lawsuit notices—all of which were mailed to potential class members on May 13, 2020; the case opt-in period had closed on August 7, 2020.

15. It is unknown how many total people who have wanted to join our firm's collective actions have failed to as a result of these problems. And if collective action is certified in this case, it is unknown how many potential members of the putative class will suffer the same fate. However, even one member failing to join the lawsuit through no fault of his or her own, but merely because the signed Consent gets lost in the mail, is too many.

16. Allowing Plaintiff's counsel to send a follow-up reminder to any class members who have not responded to our offices within thirty (30) days after the mailing of the initial Notice would provide a fair and equitable solution to ensure that more members of the proposed class who want to join the lawsuit are able to. Moreover, this would not cause any prejudice to Defendant.

17. In many of our class cases under the FLSA, email is a much more effective and timely method to communicate with parties. It is my experience in representing plaintiffs over the past six years that email is a more reliable and efficient way to deliver written communication to putative class members than using traditional U.S. Mail.

18. One of the features that email provides as opposed to traditional mail is faster feedback if an incorrect address is used. That (generally) immediate feedback that an email is undeliverable is useful information to have when the intended recipient has a defined period of time within which he must respond.

19. So-called "smart phone" usage is now almost universal among the 5,000 or so wage lawsuit plaintiffs that our law firm has represented in the past few years, and many individuals are able to use them to access their email accounts anytime and anywhere.

20. Plaintiffs in our wage lawsuits are responsive to communication via email; for many of our clients, it is preferred to regular U.S. mail.

21. If the goal is to present information to the recipient, email is measurably a more effective way to get it done than just by using regular U.S. mail.

22. In my experience, the telephone number that employers have for their employees is a cell phone number; this is true even though sometimes the telephone

number is not identified as a cell phone number. It's not a hardship on an employer to include in the contact information that it shares with us after certification the telephone that it has in its records for each class member. In fact, some employers do not object to our wage lawsuit plaintiffs' requests for that information.

23. The class of opt-ins would benefit by the ease and efficiency of a paperless notice and consent process via email. PDF files that can be signed electronically on traditional computers and on mobile devices can be sent by Plaintiff's counsel via email.

24. We obtain electronic signatures through websites such as PandaDoc.com, DocuSign.com or HelloSign.com. These are subscription Internet services that allow opt-ins to view PDFs, which they can open on their smartphones and/or computers and sign with their finger or mouse.

25. An electronic signing service is an easy and efficient means of obtaining signatures for plaintiffs who are hard to reach or who do not have easy access to computers, much less printers, scanners, or fax machines. Many individuals keep their smartphones (unlike their computers) with them at all times.

26. Our firm has extensive experience issuing notice electronically and instituting the electronic consent procedure that we have asked for in this case, and it has worked well.

**Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Executed on this 7th day of July, 2023.

*/s/ Josh Sanford*
**JOSH SANFORD**